The next case is the Bail Project, Inc. v. Commissioner, Indiana Department of Insurance, Appeal No. 22-2183 Mr. Falk Good morning. May it please the Court. The Bail Project exists for one purpose, to advocate for the end of cash bail. It does this through conduct, what the Commissioner has labeled a social experiment. It pays bail for indigent defendants who have been admitted to bail by trial court, thus demonstrating that burdening them with bail in the first instance is not necessary. The District Court erred in holding that this conduct was not expressive conduct protected by the First Amendment, and at no point in this appeal does the Commissioner ever argue that the challenged statutes here would be constitutional if, in fact, this is expressive conduct, which it is. The District Court's denial of the clearing injunction should reverse, and the matter remanded for entry of an injunction. Conduct, of course, is expressive and entitled to First Amendment protection if two factors are met. One, there must be an intent that it be expressive, and number two, the message in context and considering the surrounding circumstances must be such that it be reasonably understood to be communicative. This consideration of content and circumstances allows for the reasonable observer to have some minimal knowledge to inform their viewing. The District Court concluded that the payment of bail by the Bail Project is intended by the Project to be communicative, but it erred in failing to recognize that this, in fact, would be and surrounding circumstances here. As noted by the Commissioner, is that the Bail Project is engaged in a very public social experiment to demonstrate through conduct the payment of bail that bail is not necessary. Mr. Falk, how can you distinguish this case from Rumsfeld? What I'm concerned about here is there is an individual from the Bail Project who walks into, assume I know nothing about the Bail Project, zero, because I've not read anything about it. I've not looked at the speech. I'm just looking at the expressive conduct. I know nothing about the Bail Project, and I'm a clerk in the Lake County Courthouse. An individual walks into the clerk's office, could be in Hammond, East Chicago, doesn't matter, Crown Point, and pays bail for another individual. What possibly could the clerk take from that as a form of expressive conduct without some further speech to explain what it is that they're doing? The clerk will know that this bail is being paid for by an organization that has no relationship to the individual. The clerk will know that this person is paying bail. How will the clerk know that? How will the clerk know that the organization, whatever you call it, let's say it's a different organization than the Bail Project, how will the clerk have any idea what the relationship is between the individual who is currently incarcerated and the individual paying the bond? Well, again, content and circumstance, Your Honor. The Bail Project is going to pay bail and get a receipt which says the Bail Project's paid bail. The docket sheet will say the Bail Project has paid bail, and that will inform anyone who knows that that here is a situation where, I'm sorry. Only if you know of the Bail Project through its speech. No, Your Honor. No, the person will know that some organization... A third party. Let's say a third party, right? A third party paid bail, whether or not they're connected to the defendant. They will know that an organization is paying bail that is not related in any way to that person and thereby demonstrating... Well, they won't know that. I mean, they'll know that it's not the person. They'll have no idea whether it could be the person's employer or the person's neighbor or the person's friend. They'll have no idea. They will know it's the Bail Project, Your Honor. They will know that this organization is stepping forward and making an affirmative statement, which is... How will they know an organization is stepping forward and making an affirmative statement unless they've read about the Bail Project? They don't have to read, Your Honor. They have to be aware that this is a third party coming in that has no relationship, and they will know that because the Bail Project has a presence. The Bail Project is there. The Bail Project will be seen. Through speech? No, through being seen, through doing this repeatedly. So is it that the identity of the payor, the person who's paying, transforms the conduct or the speech into expressive conduct merely because of the identity of the person standing at the counter to pay? If the person is paying the Bail Project, and they have no relationship to the person, that payment is saying that you, individual we're paying for, you don't have to have skin in the game, you don't have to be burdened by bail, and that is exactly the statement that is being made. This isn't Rumsfeld, where you have to guess why the people were not at the law school assembly hall engaging in recruitment. Why would the clerk not have to guess as to why the third party was paying bail? Yeah, the clerk is sitting at the front desk, you know, processing bail payments all day and doing all kinds of other work that a clerk does, and a third party comes in to post bail for an individual, and the third party is called the Bail Project. Why would the clerk not have to guess as to why the Bail Project was paying bail for an individual who's locked up in jail that I'm sure the clerk has no idea who they are? I think the clerk would be able to presume through the Bail Projects coming in, paying bail, coming in, and paying bail, that what they are doing is paying bail for persons they're not related to, and they're doing so for that expressive purpose. And I should add, Your Honor, the commissioner has a regulation which specifically says that the Bail Project, charitable bail organizations, must conduct their business in such a manner that the public and those dealing with the organization shall be aware of the capacity in which the Bail Project is acting. That's clearly saying you have to be open and notorious for what you're doing. And certainly, the clerks know, the judges know, the General Judiciary knows the conduct. They all know what the Bail Project is doing. Would the Bail Project be different than from, say, someone's incarcerated, or in jail, and then somebody from their church comes, not related to them, but just comes from their church because their church feels charitable and likes to help people out, and then pays the bail. Are they engaging in the same expressive conduct? Yes. Yes, of course, but they're not regulated by the state of Indiana. Okay. The state of Indiana allows those persons. What's their message? What's the church's message? Is the church's message the same as the Bail Project? Because I would have no idea. Well, first of all, Your Honor, I think it's quite clear from Hurley that we don't need to drill down to find out what the precise message is. What would be clear from the church paying is the church is expressing a message, a charitable message. The Bail Project is individual defendant. You don't have to pay cash bail. That is the message that is imparted by what the Bail Project does, and that message is understood by those in the system. It's understood now by those who follow this regulation, which requires that the public understand and be aware of the capacity in which the Bail Project is acting. You know, charitable bail organizations are relatively new, just within the last ... I represent was founded in 2016, and then they've grown in ... Popularity is the wrong word, but there are more such projects now. This is nationwide. Do you think this question is going to differ 10 years from now if we're asking, if somebody comes in and they have a Bail Project hat on and a Bail Project jacket on, or even if they don't and their receipt says Bail Project, 10 years from now, is it going to be a different question of whether the clerk knows or a reasonable observer knows what on earth is going on? It might be, Your Honor, but again, again, I think we have to deal obviously with today, and today we have this regulation which demands that the Bail Project conduct its business so that the public and those dealing with the organization understand the capacity in which they are acting. And this, again, they have to be open and notorious in what they're doing, and what they're doing, the message is obvious. We don't know you, but here's money so you don't have to pay. So your argument is almost that the very existence of the statutory scheme and what the statutory scheme is requiring, and the language the commissioner is using, calling it a social experiment, points to the fact that it's clear a message has been conveyed. That's correct, and unlike situations where the message may be nuanced, the Bail Project's message is real clear because it's saying we're going to pay to demonstrate that you should not be obligated. What's different in Rumsfeld, though, in Rumsfeld this was well publicized as to what the military was doing. There's no doubt that a message was conveyed by the military, and it could not have been clearer, certainly clearer than the Bail Project. The message in Rumsfeld was that, yes, the law schools didn't want the military there, but if you saw the military in some other place in the college, you wouldn't know it's because they were kicked out by the law school, or maybe the law school conference rooms were all being used. How so, though? That's my question. What distinguishes the law school from the Bail Project? Because the Bail Project only does one thing. It pays cash bail, and that payment itself is the message. That payment, delivering the sum of money to the clerk after, of course, a trial court's approved bail, is the message. It is saying you don't have to pay, you shouldn't have to pay. So because law schools do more than one thing? No, Your Honor. I'm totally confused by that because it seems to me that a law school, and maybe me, I mean you don't have to apologize. I'm sure it's me. The law school in Rumsfeld, the law school said you can't do it on campus, and whether it was in the newspaper or not, I mean, I think you could argue whether that was more publicized than what the Bail Project is doing, right? But in Rumsfeld, they said a casual observer would have no idea why the interviews were occurring off campus. And the question here is, why would a casual observer, a clerk, have any idea what message was being communicated by the Bail Project, were it not for the Bail Project speech? The casual observer will know that this organization is paying bail for persons that they have no prior relationship. Yeah, I guess that's where we disagree. I don't know how a casual observer would have no, I don't have any idea how anybody would know the relationship between a church, and an incarcerated individual, or the Bail Project, or an incarcerated individual, or a neighbor, and an incarcerated, the clerk doesn't ask, who are you, why are you paying bail, how do you know this person, how long have you known it, they just take the cash. Contents and circumstances, your honor, the Bail Project has paid bail for approximately a thousand people in Lake and Marion County, so the clerk is going to be aware of the Bail Project. Mr. Falk. I'm sorry. It's 2017, not 2016. I'm just picking a date. And the Bail Project makes its first posting of a bond. Have they already, because I'm really looking to see what the profile, public profile of the Bail Project was, and the very first day they made the first attempt, or actually bonded somebody out. Well, again. So is there a violation that very first day under this, under 1300? Well, I don't think we would have brought the lawsuit if it was the very first day, but. Well, I mean, we're talking about context here. Of course, and of course, we have to remember the context and circumstances here, much like in Spence where the court said you had to at least recognize that the Vietnam conflict was going on, Kent State had happened, and Cambodia had been invaded. The context, of course, is that the judges in Lake and Marion County, two counties, are well aware of the Bail Project. They've approved. How so? I guess that's, I don't know whether that came out in the hearing, but what is the profile, the first six months, let's say, of the Bail Project? The Bail Project had worked with the judges. There's letters in the record from both the judges of Lake and Marion County welcoming the Bail Project, welcoming their efforts, indicating that would help them to comply with the Indiana criminal rule concerning bail. So they were certainly aware of it. The system was aware of it from the very beginning. And from the very beginning, people were aware that the Bail Project was going to be making  Whether that would be day one, as far as the clerk was concerned, I do not know. But the system was well aware of it. And now, of course, we have this regulation, which I've cited repeatedly, which demands that the Bail Project let everyone know, not just who they're dealing with, but the general public, the capacity in which they are operating. And the capacity in which they are operating is the speech, is the expressive conduct. We are paying bail because we don't think anyone should be required to pay. That speech, you have to separate. I mean, I guess we're just arguing here. That's I just I feel like that that's that speech that you're explaining why you're paying bail, that speech. That's correct. However, if the if the reasonable observer, given contents and circumstances, understands that the Bail Project is stepping forward and paying bail for stranger, that is the message. That is the message saying, you, defendant, you don't have to pay bail. You should not be required to pay bail. That's the sum total of the Bail Project's message and advocacy. And that is their expressive conduct. This is not like Rumsfeld, where you have to wonder why someone is not at the law school. Could they be recruiting somewhere else for some other reason? Here, every individual act that the Bail Project engages in, every individual bail payment is expressing that one message that the Bail Project has, which is that individuals should not be saddled with bail. Thank you. Thank you, Mr. Ball. Mr. Craft. Good morning, Your Honor. May it please the Court, Aaron Craft for the State. The Court should affirm the denial of preliminary injunction for two reasons. First, there's nothing inherently communicative in the act of paying bail for violent offenders, which is all that House Enrolled Act 1300 regulates. Any message remotely attributable to that act comes across only because of the Bail Project's speech before, during, and after the act. Second, at most, the act of paying bail merely generates data for the Bail Project to use in its speech later. But there's no First Amendment right to data collection, and that's what this Court held in Indiana University. Can you pick up where we left off with Mr. Falk? That the very existence of this law, you know, identifying charitable bail organizations, of which there's only one in Indiana, the Bail Project, and saying what they're doing has to be out in the open and known, and even the Commissioner's own language here on appeal, so calling it a social experiment, more than suggests that it's clear, at least to the General Assembly and to the Commissioner, who would fall into that pool of reasonable observers, okay, not to mention the clerks and the judges, that it's clear there is a message being conveyed. And keeping in mind the case law, we don't have to know the exact message. We just, for a reasonable observer, just needs to know there's a message being conveyed. So can you address the effect of the existence and the substance of the law, and even the Commissioner's own language calling this a social experiment, and how that affects our analysis of whether everybody understands there's a message being conveyed here? Certainly, Your Honor, and I think I have four responses. First, calling something a social experiment, an experiment is conduct. And that's why Curry's important here. Engaging in conduct to create an input for later speech is not itself speech. It's not itself expressive conduct. Second, a regulation requiring someone to hold themselves out openly and notoriously to engage in speech, telling everyone what they're doing, or to avoid misleading the public into thinking they're something that they're not, that, again, is speech. That's explanatory speech. Third, with respect, I don't read Hurley the same way my friend does, and the same way Your Honor has suggested. Hurley was about saying, in a parade that has a ton of different expressive elements, you don't have to have a single particularized message. But I think the point in Rumsfeld against Fair, that a casual observer would not understand any message, or the particular message being conveyed by a military recruiter interviewing off campus, I think that underscores the idea that there does have to be some particularity in the message. Fourth, all that aside, the question is whether the act of paying bail in the clerk's office is expressive, because that's the only thing the law regulates. Now, it's not, as Judge Kirsch alluded to earlier, this act is done by everyone. Defendants' families, bail agents, maybe a member of a church in the bail project. And it's done the same way. Someone appears, they pay, the clerk takes the money. Absent the bail project's speech, there is nothing that sets the bail project's conduct apart from everyone else's. Yet the bail project seems to concede, and they did below, that no one else is engaging in expressive conduct when they're paying bail. I think it's also important that this is a routine act. I think he said quite the opposite. I think he said the church member would be engaging in expressive conduct. The only difference was they aren't regulated by this new Indiana law. Well, I don't think, I realize he said that now, but I disagree with that. If someone comes in and does random charity, they may just be saying, out of the goodness of my heart, it's Christmas, I have extra money, I'm going to help someone out. They're not conveying a message about cash bail being bad, about relieving a defendant. They're just saying, we're going to help someone out. Let me take you to where Judge Flom left off, the first expressions. The quintessential example in this field of expressive conduct is flag burning. Okay, and now the courts have said, we don't need any discussion. We know a message is being conveyed. But what about those first burned flags? Is the only reason we know, without discussion and accompanying speech, that flag burning is intended to convey a message? Because time has passed. We've seen it over and over. Courts have contemplated this and discussed this. And so, it has that symbolism and meaning garnered over time. That's my question to you, because if that is so, we don't have that here when we've got a new organization, a new form of protest in a society where protest evolves over time. The way we respond where issues of policy or public concern evolve over time. And now we're in a moment where cash bail is one such issue. It doesn't have the longevity in our history of flag burning. So, I need you to address that. So, I think certainly there is conduct that, over time, develops an expressive significance. Burning flags, taping a peace symbol to a flag. I think a lot of that has to do with the inherent symbolism. It has to do with the context, too. I mean, if you burn a flag at an anti-war rally, you're engaging in expressive conduct. If I walked into a Walgreens and burned a flag this afternoon, I would probably be arrested. It would be hard for me to say, well, that's expressive context. They say, Kersh, it's 2 o'clock in the afternoon at a Walgreens on State Street, and you're burning a flag. That is illegal. You cannot do that. Absolutely, Your Honor. Context does matter. And that is, again, what sets this case apart. Because the context is, the Bail Projects Act of paying bail is the same that the Act always is. In this regard, Clancy is really governing here. Because in Clancy, you have the person is traveling to Iraq. Well, no one knows his motivations unless he tells them. And traveling on an airline is not something that's unique or something that is taken on expressive significance over time. It's not a common act done in an uncommon place. It's not an unorthodox act. But you have to address my evolution question. Because this idea that third parties would pay bail for people they don't know for all that is new. Yes. And I think the fact that it is new, if the communicative, the fact that it's new means that it is not, as this court said in Tagami, comprehensively communicating its message without explanatory speech. So at what point does it, you know, five years from now? This is the question I asked Mr. Falk. 10 years from now, do we have a different analysis as a court? The analysis might be slightly different, but the context hasn't changed. It can't be isolated in that view as to how long this has been being done. Because the thing is, is that- Well, 10 years from now, the bail project goes in. And 10 is just a random number. And now everybody knows they're doing it because they're saying, you don't need to have skin in the game. No one should have to pay cash bail. It's a tax on the poor. Your Honor, it doesn't change the bottom line, because the question is whether the act itself is expressing significance. The Supreme Court and this court have been very cautious in adopting the sort of flexible, watered down standard that my friend offers. The reason is, is that there can be, as the Supreme Court said in Dows versus Stanglin, a kernel expression in every act of conduct. But the First Amendment doesn't shield all this conduct. When we look at the cases, Texas versus Johnson, O'Brien, and the like, even Clark versus CCNV, what's going on is you have either a long held symbol being used in a curious way that may cause a bystander to sort of take note and say, oh, wow, what's going on here? In Clark, you have a bunch of people set up camping on the National Mall, where camping usually isn't allowed. Again, it's context of maybe even a common event being done in an uncommon place. So the fact that the bail project is engaging in the conduct over time and paying the bail, it still doesn't change the full context, because that is the exact same thing that everyone else is doing. And the only thing that sets the bail project apart is that it is telling you why it's doing it. But when you have to have that explanatory speech, that means that it is not inherently expressive, and therefore, not shielded by the First Amendment. So Mr. Kraft, your argument is if I stood on the courthouse steps and yelled real loud and real clear that I was from the bail project, and I was there expressing a message protesting against cash bail, and then walked into the clerk's office and paid the cash bail, that would not be, my conduct would not be, I can't turn my conduct into expressive conduct by standing outside the clerk's office and yelling real loud and real clear, I'm here from the bail project to convey a message. And then walk in, engage in conduct, and say, aha, my conduct is now expressive, because I just yelled it real loud and real clear. That's exactly right, Your Honor. And in fact, the Supreme Court rejected that very idea in the Rumsfeld v. Fair case. It said, if we were to condone that sort of approach, then someone could say, I'm not going to pay taxes, because I'm protesting the IRS. And then all of a sudden, the tax code is subject to O'Brien scrutiny. And the Supreme Court flatly rejected that and said, there's nothing in O'Brien or its progeny that supports that view. And that's all we have here. The only reason the judges, the clerks, the public knows about any communicative significance of the bail project's act of paying bail is because the bail project is telling them about it and is giving that explanatory speech. I think it's also interesting that really what the bail project is interested in is whether the defendant ends up showing up to trial, because that's what their speech is about. Their mission, as my friend said, is they want to advocate that cash bail is unnecessary to have people show up to trial. Well, that's something you don't know until months later. And it's incongruous to suggest that an act is inherently expressive when the act and the message are several months apart. When the message arrives six months down the line, you can't say the act itself was expressive. Mr. Craft, one of the concerns I have here is the appearance of targeted legislation. For example, the act requires that you obtain a certificate to pay bail for more than three individuals in a 180-day period. What's the sense of that? What's the difference? I mean, what is the legislature's? Where are they going with three versus 30 versus one? I mean, can you honestly stand here today and say this wasn't focused solely on one project and whether we should read into that a recognition by the legislature that there is an attempt at speech here? Well, Your Honor, I'm not going to suggest that. But legislation is often the result of particular instances and particular actions that occur. And I think what led to this law, it's been a long time, not a long time. Since the Bail Project started operating, there have been some concerns about it. And then there were a few high-profile incidents where people bailed out by the Bail Project went on to commit further crimes and some pretty serious ones at that. So the legislature responded. Now, line drawing is the typical legislative response. And so the way I read the statute is they don't want to cut off the ability of a church bailing someone out, even though they're not a relative. Because that hasn't been an issue. That's not something that the legislature was responding to. And as we point out in our brief. If the legislature was responding to that, they could have made this law far more onerous, right? To say something like, if a defendant himself or herself are going to pay cash bail, the judge sets the bail at x. If the bail is paid by a third party, the bail is x times 4, the cash bail. The statute could, the legislature could do that. Yeah, I think that's right. The legislature could do that in a number of ways. But this is the manner, this is the way the legislature chose to regulate this here. And it chose to regulate only the act of paying bail. It does not limit in any way what the Bail Project can say. It can express its views to its heart's desire as to its. Well, it no longer can bail just anybody out. It can't bail out people who've had a violent felony in any state or who've been charged with a violent felony. And surely, relatives and church members have bailed out people who went on to commit crimes. But the legislature is not going after that. Only, this is back to Judge Fromm's question, only after the Bail Project doing so. I see my time's up. May I answer? Yes. The legislature recognized that there are differing incentives at play here. So when a bail agent or the family bails out the defendant, there's a financial incentive. In fact, that's the Bail Project's whole point. There's a financial incentive for the defendant to show up. That isn't there when the Bail Project does it. That's the Bail Project's goal. Now, the Bail Project says, well, we don't think that financial incentive does anything. But as a matter of rational basis review under the Equal Protection Clause, that's a reasonable conclusion for the General Assembly to reach. And for that reason, the statute doesn't violate the Equal Protection Clause. Also doesn't violate the First Amendment. Therefore, we ask that the court affirm the denial of the preliminary injunction. Thank you, Mr. Craft. Mr. Falk, would you like some rebuttal time? Yes, we'll give you two minutes. Thank you very much. Questions were asked about evolution. And in thinking about it, I don't know where it started. But I know where we are now. Because this regulation, which I've cited repeatedly, is a statement that the Bail Project, if it's licensed, must let everyone know the capacity in which it is acting. And it does that through its conduct, not its language. It does that through paying bail in an open and notorious way as a social experiment. And in looking at the reasonable observer, we have to assume they have some minimal understanding. In Spence, the Supreme Court basically said that someone who did not know about the Vietnam conflict and where things were with Kent State and the peace movement wouldn't have understood the peace symbol on the flag. Well, how did they get that understanding? They read about it. They heard about it. They incorporated that into their minimal understanding into the circumstances under which they assessed the conduct. And that's exactly what we have here. This is a situation where people are aware. They see. The judges know. The judges follow. The legislature certainly paid attention. And this is a situation where the state has reached out in a situation where everyone in the universe can pay bail, but not the bail project. And that is obviously a reaction to the bail project's conduct. And for that reason, we think the district court should be reversed and an injunction should now issue. Thank you. Thank you, Mr. Baldwin. Thank you, counsel. The case will be taken under advisement.